1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| AUTHENTIFY PATENT CO., LLC, | Case No. C13-00741-RSM |
| Plaintiff, | |
| v. | ORDER DENYING MOTION TO DISMISS |
| STRIKEFORCE TECHNOLOGIES, INC., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court upon Defendant's Motion to Dismiss. Dkt. # 9. Defendant, StrikeForce Technologies, Inc., moves to dismiss all claims in Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(2). The Court granted jurisdictional discovery and oral argument to determine the nature and extent of Defendant's connections to the forum state. Having considered the parties' briefing and the relevant record, the Court denies Defendant's motion for the reasons discussed herein.

## II. BACKGROUND

This is a patent infringement action arising under the Patent Act, 35 U.S.C. § 1, *et seq*., and relating to out-of-band ("OOB") customer authentication. The relevant factual background has been previously discussed in the Court's Order granting jurisdictional discovery. Dkt. # 23.

ORDER DENYING MOTION TO DISMISS - 1

Plaintiff Authentify Patent. Co. ("Authentify"), a Washington LLC, is the owner of U.S. Patent No. 6,934,858, entitled "System and Method of Using the Public Switched Telephone Network in Providing Authentication or Authorization for Online Transactions," issued on August 23, 2005 (the " '858 Patent"). The '858 Patent describes and claims a system for authenticating or authorizing on-line transactions using simultaneous or substantially simultaneous communication on two different networks to verify a user's identity. Dkt. #1, Ex. A, p. 7. StrikeForce Technologies, Inc. ("StrikeForce"), a Wyoming corporation headquartered in New Jersey, makes and sells an OOB authentication software product known as ProtectID. *See* Dkt. #9, pp. 6-7. StrikeForce is the owner of U.S. Patent No. 7,871,599 (the "'599 Patent"), which is directed to a multichannel security system and method for authenticating a user seeking to gain access to, for example, Internet websites and VPN networks. *See* Dkt. # 9, p. 6. On July 9, 2013, the U.S. Patent and Trademark Office issued to StrikeForce U.S. Patent No. 8,484,698 (the " '698 Patent"), a continuation of the '599 Patent. Authentify's '858 Patent and StrikeForce's '599 and '698 Patents all relate to OOB authentication.

The instant action was filed by Authentify on April 26, 2013, and alleges that StrikeForce's activities in the United States relating to ProtectID infringe one or more claims of Authentify's '858 Patent. Dkt. #1, ¶ 15. On May 10, 2013, counsel for Authentify sent a letter and copy of the Complaint to StrikeForce, notifying StrikeForce of the filing of litigation and inquiring into StrikeForce's amenability to settlement. *See* Dkt. # 12, Ex. 2. Authentify had not yet issued a summons when, on May 22, 2013, StrikeForce filed a complaint in the U.S. District Court for the District of New Jersey, seeking declaratory judgment of non-infringement and invalidity of the '858 Patent. StrikeForce subsequently amended its

complaint in the New Jersey litigation to include Authentify, Inc., Authentify Patent Co.'s sole and managing member, as a defendant.

StrikeForce's jurisdictional theory in the New Jersey litigation is that Authentify Patent Co. is the alter-ego of Authentify, Inc., a company with undisputed "continuous and systematic" contacts with New Jersey. *StrikeForce Technologies, Inc. v. Authentify Patent Co*., No. 13-3242, Dkt. # 35, p. 7, (D. N.J. 2014). On January 16, 2014, the New Jersey court denied motions to dismiss and to stay by defendants on the grounds that StrikeForce's alter-ego jurisdictional theory is appropriately decided on summary judgment, after the parties have engaged in discovery. *Id.* at ¶ 9.

StrikeForce moves this Court to dismiss the present action for lack of personal jurisdiction and improper venue under Federal Rule of Civil Procedure 12(b)(2). In the alternative, StrikeForce requests transfer of this matter to the U.S. District Court for the District of New Jersey. *See* Dkt. # 9. The Court found that a more satisfactory showing of the facts was necessary in order to reach a determination on whether StrikeForce's actions: (1) were purposefully directed at Washington State residents, and (2) constituted offers to sell the allegedly infringing product. *See* Dkt. # 23. Consequently, the Court continued Defendant's Motion to Dismiss (Dkt. # 9) for five weeks to allow Plaintiff to conduct limited jurisdictional discovery. *Id.*

Each of the parties submitted a supplemental brief in opposition to or support of Defendant's Motion to Dismiss based on the facts revealed during jurisdictional discovery. *See* Dkt. # 24; Dkt. # 26. Plaintiff additionally moves to strike Defendant's Supplemental Reply (Dkt. # 26) on account of its over-length. *See* Dkt. # 29.

ORDER DENYING MOTION TO DISMISS - 3

1

2

### III. DISCUSSION

3

**A.   Standard for Rule 12(b)(2) Dismissal**

4

5          Plaintiff bears the burden to establish that personal jurisdiction exists. *See Lee v. City of*

6  *Los Angles*, 250 F.3d 668, 692 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure

7  12(b)(2), a defendant may move to dismiss a complaint on the ground that the court lacks

8  personal jurisdiction over the defendant. The law of the Federal Circuit determines whether the

9  exercise of personal jurisdiction comports with the requirements of due process in patent

10  infringement actions. *Deprenyl Animal Health, Inc. v. University of Toronto Innovation*

11  *Foundation*, 297 F.3d 1343 (Fed. Cir. 2002). Where, as here, the district court has allowed the

12  parties to conduct discovery on the jurisdictional issue and held an evidentiary hearing, the

13  plaintiff must prove that jurisdiction exists by a preponderance of the evidence. *Data Disc, Inc.*

14  *v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280, 1285 (9th cir. 1977).

15  **B.  Motion to Strike**

16          As a preliminary matter, the Court denies Plaintiff's's motion to strike. Plaintiff is

17  correct that Defendant exceeded its allowed page limit pursuant to LCR 7(e). Nonetheless, the

18  Court finds that any prejudice to Plaintiff has been offset by its opportunity to respond at oral

19  argument.  The Court admonishes that should Defendant fail to comply with page limits in any

20  future filing in this matter, the Court will disregard any pages in excess of the applicable limit.

21  **C.  Personal Jurisdiction**

22

23          Determining "whether jurisdiction exists over an out-of-state defendant involves two

24  inquiries: whether a forum state's long-arm statute permits service of process and whether

25  assertion of personal jurisdiction violates due process." *Genetic Implant Sys., Inc. v. Core-Vent*

26  *Corp.* 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S.

ORDER DENYING MOTION TO DISMISS - 4

462, 471–76 (1985)). Because Washington's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process. *See, e.g.*, *IP Innovation, L.L.C. v. RealNetworks, Inc.*, 310 F.Supp.2d 1209, 1212 (W.D. Wash. 2004); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

*International Shoe* and its progeny establish a two-pronged test for whether the exercise of personal jurisdiction comports with due process. *See Int'l Shoe Co. v. State of Washington*, 326 U.S. 310 (1945); *Deprenyl*, 297 F.3d at 1350. First, the defendant must have "minimum contacts" with the forum. *Id.* Second, the assertion of personal jurisdiction over the defendant must comport with traditional notions of fair play and substantial justice. *Id.*  Due process permits the exercise of general jurisdiction where a defendant's contacts are continuous and systematic. *See Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 415-416 (1984). Here, Plaintiff does not assert general jurisdiction over Defendant but rather asserts that this Court may properly exercise specific jurisdiction over Defendant. *See* Dkt. #11, p. 5.

The Federal Circuit applies a three-prong test in determining whether the exercise of specific jurisdiction over an out-of-state defendant comports with due process: (1) the defendant must have "purposefully directed [its] activities at residents" of the forum state; (2) the claim must arise out of or relate to the defendant's activities in the forum state; and (3) the assertion of personal jurisdiction over the defendant must comport with traditional notions of fair play and substantial justice. *Akro Corp. v. Luker,* 45 F.3d 1541, 1545–46 (Fed.Cir. 1995), *cert. denied,* 515 U.S. 1122 (1995). "Under this test, a court may properly assert specific jurisdiction, even if the contacts are isolated and sporadic, so long as the cause of action arises out of or relates to those contacts." *Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). Thus, in "contrast to general, all-purpose jurisdiction, specific

ORDER DENYING MOTION TO DISMISS - 5

jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2851 (2011). The plaintiff bears the burden of establishing that the first two factors have been met. *Inamed Corp.,* 249 F.3d at 1360. With regard to the third factor, the burden of proof is on the defendant to make a convincing case that other considerations render the exercise of jurisdiction constitutionally unreasonable. *Id.*

In the present case, the satisfaction of the first and second prongs of the minimum contacts test turns on the character and extent of Defendant's solicitation of Washington-based companies with regards to its ProtectID product.

### a.   Purposeful Direction.

The first prong of the minimum contacts test assesses whether a defendant has "deliberately … engaged in significant activities within a [forum] State" and has thereby "availed himself of the privilege of conducting business there" and acquired the protection of the forum's laws. *Burger King*, 471 U.S. at 475-76. A single act is sufficient to support personal jurisdiction where it establishes a "substantial connection" to the forum state. *Id*. at 475 n. 18. *See also, Nuance Communications, Inc. v. Abbyy Software House,* 626 F.3d 1222, 1232-33 (Fed. Cir. 2010).

In granting jurisdictional discovery, the Court explained that Plaintiff had not yet met its burden of showing that Defendant had purposefully directed activities into Washington. *See* Dkt. # 23, p. 7. In *3D Systems Inc. v. Aarotech Laboratories,* the Federal Circuit rested its purposeful direction analysis on a number of activities by the defendant beyond sending promotional letters, including sending videos and sample parts and issuing price quotations to residents of the forum state. 160 F.3d 1373, 1378 (Fed. Cir. 1998). Prior to jurisdictional

discovery, Authentify relied on consecutive Declarations of StrikeForce's Executive Director, George Waller, to make a similar showing as to StrikeForce's activities in Washington. However, there were no actions analogous to those discussed in *3D Systems* mentioned in the Waller Declarations or alleged by Authentify in its complaint or via affidavit. *See, e.g.,* Dkt. # 11, p. 7 n.3; Dkt. # 23, pp. 7-8. Plaintiff now contends that emails acquired during jurisdictional discovery are illustrative of Defendant's purposeful direction of activities at Washington-based residents.

Plaintiff argues that the purposeful availment prong is satisfied where Defendant sent promotional material, offered to set up trial periods, conducted an online demonstration of the product, and sent ProtectID pricing information to Washington-based entities or individuals. *See* Dkt. #24, p. 8. Plaintiff asserts that StrikeForce has provided technical data and pricing information to at least two different entities in Washington in an attempt to sell its ProtectID product. *See* Dkt. # 24, p. 7.  The email communications at issue involve correspondence with three Washington-based residents: Jordan Lee of Compushare Management Systems, Inc.; Mark Grindstaff, an employee of Pierce County; and Microsoft Corporation.

### i. Jordan Lee.

Plaintiff asserts that Defendant's communications with Jordan Lee were made in furtherance of the formation of a business relationship, with Mr. Lee as a prospective reseller of StrikeForce's ProtectID product in Washington State. *See* Dkt. # 24, p. 4.  As part of Mr. Waller's attempt to enlist Mr. Lee as a reseller of ProtectID, Mr. Waller provided informational brochures to Mr. Lee regarding the ProtectID product, including a white paper that described how the ProtectID system operated. *See* Dkt. #25, Exh. B, pp. 8-9. Mr. Waller's

communications with Mr. Lee also included specific pricing information on two separate occasions. *See* Dkt. #25, Exh. B, pp. 7-8.

Defendant attempts to draw a distinction between Mr. Lee, as one interested in reselling StrikeForce products, and one who simply purchases such products without intending to resell them. *See* Dkt. # 26, p. 12. However, this distinction is one without a difference because Mr. Waller's attempt to sell the ProtectID product to Mr. Lee is the act at issue in the Court's jurisdictional inquiry, not Mr. Lee's subsequent intention to resell the product. This act of attempted sale is evidenced by Mr. Waller's communications with Mr. Lee, which included more than mere promotional materials, namely detailed pricing information and an offer to set up a test of the ProtectID system. The Court accordingly agrees with Plaintiff that Mr. Waller's communications with Mr. Lee therefore exemplify the purposeful direction of activities by StrikeForce at a resident of Washington. *See 3D Systems* 160 F.3d at 1378 (concluding that Aarotech purposefully directed activities at residents of California when it "sent promotional letters, solicited orders for models, sent videos and sample parts, and issued price quotations to residents of California.").

### ii.  Mark Grindstaff.

Taken together with Mr. Waller's correspondence with Mr. Lee, the additional efforts of StrikeForce to direct commercial efforts at Mark Grindstaff, an employee of Pierce County, provide sufficient evidence of purposeful direction to satisfy the first prong of the specific jurisdiction analysis. Mr. Grindstaff received promotional materials from Defendant similar to those received by Mr. Lee. *See* Dkt. #25, Exh. E, p. 144. In addition, Mr. Waller conducted a remote demonstration of the ProtectID product for Mr. Grindstaff through an online conferencing site, which allowed Mr. Grindstaff to view the ProtectID product on his own

ORDER DENYING MOTION TO DISMISS - 8

computer screen. *Id.* Mr. Waller also sent Mr. Grindstaff detailed pricing information regarding the ProtectID product. *Id.* Under Federal Circuit precedent, Mr. Waller's communications with Mr. Grindstaff therefore satisfy the purposeful direction prong of the specific personal jurisdiction test.

### iii.  Microsoft Letter of Infringement.

StrikeForce sent letters to Microsoft's former CEO, Steve Ballmer, and a Microsoft patent attorney informing them that Microsoft was infringing StrikeForce's '599 patent. Dkt. #25, Exh. F. Under Federal Circuit law, "the sending of an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction over an out-of-state patentee." *Inamed Corp.* 249 F.3d at 1361. As the Federal Circuit explained, "[a]s a matter of patent law policy, ... 'principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum.' " *Radio Sys. Corp. v. Accession, Inc.,* 638 F.3d 785, 789 (Fed. Cir. 2011). Because StrikeForce's communication with Microsoft was not an offer to sell its ProtectID product but rather a notice of infringement, it is insufficient, on its own, to confer personal jurisdiction. *See* Dkt. # 25, Exh. F. The Court therefore declines to consider the communications between StrikeForce and Microsoft in its specific personal jurisdiction analysis.

Even so, on the basis of StrikeForce's communications with Messrs. Lee and Grindstaff, the Court finds that a  preponderance of the evidence establishes that StrikeForce purposefully directed its commercial efforts at Washington State residents, establishing through them a sufficiently substantial connection with the forum state to satisfy the first prong of the specific jurisdiction analysis.

ORDER DENYING MOTION TO DISMISS - 9

1

2

### b.   Arising out of Activity in the Forum State.

3

The second prong of the minimum contacts test asks whether the cause of action arises

4

out of or directly relates to the purposefully directed activities. Plaintiff must demonstrate by a

5

preponderance of the evidence that its claim for patent infringement is connected to

6

StrikeForce's activity within the State of Washington related to its '858 Patent. *See, e.g.,*

7

*Burger King*, 471 U.S. at 472-73; *Data Disc,* 557 F.2d at 1285. Patent infringement occurs

8

when someone "without authority makes, uses, offers to sell, or sells any patented invention."

9

35 U.S.C. § 271(a) (1994). In the instant matter, the central question for the Court under the

10

second prong of the minimum contacts test is consequently whether or not StrikeForce's

11

solicitations constitute offers to sell under U.S.C. § 271(a). Case law from the Federal Circuit

12

is instructive in this analysis. In *3D Systems*, the court concluded that "[a]s a matter of federal

13

statutory construction, the price quotation letters can be regarded as 'offer[s] to sell' under §

14

271 based on the substance conveyed in the letters, *i.e.*, a description of the allegedly

15

infringing merchandise and the price at which it can be purchased." 160 F.3d at 1379. Based

16

on this interpretation of § 271(a), the court concluded that the plaintiff's claim for patent

17

infringement arose out of the defendant's "actions of sending price quotation letters to

18

California residents," and that the second prong of the specific jurisdiction test had therefore

19

been met. *Id.*

20

In *Rotec Industries, Inc. v. Mitsubishi Corp,* the Federal Circuit provided additional

21

guidance to assist in interpretation of the statutory "offers to sell" language in § 271(a). In

22

*Rotec,* the court determined that liability for § 271(a) "offers to sell" should be defined

23

according to "the norms of traditional contractual analysis." 215 F.3d 1246, 1255 (Fed. Cir.

24

2000). An offer to sell arises where a defendant "communicate[s] a 'manifestation of

25

26

ORDER DENYING MOTION TO DISMISS - 10

willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* at 1257 (quoting *Restatement (Second) of Contracts* § 24 (1979)); *see also MEMC Electronic Materials, Inc.*, *v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1376 (Fed. Cir. 2005). A solicitation may be considered an offer to sell where it contains features such as price quotations and terms, which could "make it into a binding contract by simple acceptance." *MEMC Electronic Materials, Inc.*, 420 F.3d at 1376 (relying on *3D Systems* to hold that the defendant had not offered to sell its products where there was no evidence that its emails included price terms).

Plaintiff relies on several sets of communications between StrikeForce and two Washington State residents, Grindstaff and Lee, for its argument that Defendant offered to sell its allegedly infringing OOB authentication product. Defendant, by contrast, denies that these communications related to the patented technology at issue in this case. StrikeForce contends that its ProtectID product contains twelve possible components, with only some of those components relating to OOB authentication. Additional components of ProtectID that do not involve OOB authentication allegedly include in-band technology, such as SMS and soft or hard tokens. *See* Dkt. # 26, p 8. Defendant argues that the email communications between Mr. Waller and Messr. Lee and Grindstaff involve components of ProtectID unrelated to OOB authentication technology.

The Court is not convinced that the pricing information relayed by Mr. Waller to Mr. Grindstaff relates specifically to OOB technology, as it appears to reference parts of the ProtectID product that are not related to the patents at issue in this case. *See* Dkt. # 25, Exh. E, pp. 140-41. The Court accordingly declines to find personal jurisdiction on the basis of the Waller-Grindstaff communications alone. However, the Court finds that Defendant's

ORDER DENYING MOTION TO DISMISS - 11

communications with Mr. Lee constitute offers to sell the allegedly infringing product under the norms of traditional contract analysis. In an email dated September 5, 2012, Mr. Waller sent Mr. Lee specific pricing and product information that involved the patented OOB technology. *See* Dkt. # 25, Exh. B, pp. 7-9. The pricing information included the hosted per-transaction fee based on the transaction bucket size selected by the offeree. *Id.* Under the standards established by the Federal Circuit in *Rotec* and *3D Systems*, these communications constitute "offer[s] to sell" under § 271(a) as they contain specific pricing terms and detailed product information regarding the patented OOB technology. *See id.* at pp. 7-9. Mr. Lee could have accepted the offer by merely indicating to Mr. Waller that he would purchase buckets of one of the specified transaction sizes at the proposed hosted per-transaction fee. *See id.* Because Mr. Lee could have accepted the proposed terms offered by Mr. Waller, thereby creating a binding contract, the Court finds that Plaintiff has demonstrated by a preponderance of the evidence that Defendant's interactions with Mr. Lee satisfy the second prong of the specific personal jurisdiction test.

### c. Fair Play and Substantial Justice.

Once it has been decided that a defendant purposefully established minimum contacts within the forum state, these contacts may be "considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice"— that is, whether the exercise of jurisdiction is reasonable under the circumstances of the particular case. *See Burger King,* 471 U.S. at 476 (quoting *International Shoe Co.,* 326 U.S. at 320 (1945)). When a defendant seeks to rely on the "fair play and substantial justice" factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, "[it] must present a compelling case that the presence of some

ORDER DENYING MOTION TO DISMISS - 12

other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477.

Instances in which a defendant may successfully invoke "fair play and substantial justice" to

defeat an otherwise constitutional exercise of personal jurisdiction "are limited to the rare

situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the

forum are so attenuated that they are clearly outweighed by the burden of subjecting the

defendant to litigation within the forum." *Akro Corp.,* 45 F.3d at 1549, quoting *Beverly Hills*

*Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1568 (Fed.Cir.1994).

In *Electronics for Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1351–52 (Fed.Cir.2003), the

Federal Circuit provided five factors for courts to apply in determining whether the exercise of

personal jurisdiction is reasonable: (1) the burden on the defendant, (2) the interests of the

forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's

interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of

the several states in furthering fundamental substantive social policies. The defendant bears the

burden to present "a compelling case that the presence of some other considerations would

render jurisdiction unreasonable. *Burger King,* 471 U.S. at 476-77.

In the instant case, Defendant does not cite any of these factors in its argument but

instead focuses on the attenuated nature of its contacts with the forum state. *See* Dkt. # 26, p.

24. Defendant relies on *Hockerson-Halberstadt, Inc., v. Propet USA, Inc.,* 62 Fed. App'x 322

(Fed. Cir. 2003), wherein the court held that conferring personal jurisdiction would offend

traditional notions of fair play and substantial justice where the defendant's contacts with the

forum state were miniscule and unrelated to the cause of the plaintiff's alleged injury. The

Court finds *Hockerson* inapposite, as it concerned the exercise of general, rather than specific

jurisdiction. The defendant in *Hockerson* operated an online retailer which sold shoes around

ORDER DENYING MOTION TO DISMISS - 13

the country, with only a small portion of sales – unrelated to the plaintiff's alleged injury – occurring in the forum state. *Id.* at 337. Because the retailer did not purposefully direct its commercial efforts to sell the allegedly infringing product towards residents of the forum state, the court considered whether the defendant's contacts with the forum state were such that the court could have exercised *general* personal jurisdiction over the defendant. *Id.* Here, the Court's inquiry is whether *specific* personal jurisdiction is proper, and it is appropriate to focus on a small number of, or even singular acts to make that determination. Further, the *Hockerson* court determined that the defendant's activities failed to meet the minimum contacts test, while this Court has already reached a contrary finding in the instant matter.

There is no reason why conferring personal jurisdiction would offend traditional notions of fair play and justice in this case. An assessment of the factors from *Electronics for Imaging* shows that the exercise of personal jurisdiction in this forum is reasonable. First, requiring a New Jersey-based defendant to litigate in Washington would not impose on it an excessive geographic burden. Second, Washington has a substantial interest in protecting its residents from the sale of allegedly infringing patents. *See Deprenyl,* 297 F.3d at 1356. Third, Authentify also has an acknowledged interest in protecting itself from patent infringement. Fourth, with regard to the interstate judicial system's interest in obtaining efficient resolution of this dispute, the Court recognizes that StrikeForce has filed a declaratory judgment action in the U.S. District Court for the District of New Jersey. However, the pending New Jersey case, still at an early stage of litigation, could be efficiently consolidated with this case if it is determined that they are sufficiently related. Finally, the Court does not see any conflict between the interests of Washington and New Jersey in furthering their own respective substantive laws, as the same body of federal patent law would govern the patent infringement

claim irrespective of the forum. In light of this analysis, the Court finds that it is not unreasonable to exercise personal jurisdiction in this instance.

**D. Venue**

A motion to transfer an action pursuant to 28 U.S.C. § 1404(a) presents two basic questions: (1) whether the action sought to be transferred might have been brought in the proposed transferee district; and (2) whether the transfer would be for the convenience of parties and witnesses, in the interest of justice. *Int'l Patent Dev. Corp. v. Wyomont Partners,* 489 F.Supp. 226, 228 (D.Nev.1980) (internal citation omitted). The court then balances the competing public and private interest factors to determine if transfer is appropriate, recognizing that "[section] 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack,* 376 U.S. 612, 645–46 (1964). Also, "transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Id.* at 646. Nor is the court required to determine the best venue for the action. *Gherebi v. Bush,* 352 F.3d 1278, 1303 (9th Cir.2003) (internal quotations omitted), *vacated on other grounds,* 542 U.S. 952 (2004). There is a strong presumption in favor of the plaintiff's choice of forum which must be taken into account when deciding whether transfer is warranted. *Id.* at 1303.

The Ninth Circuit has identified a number of public and private factors that a district court may consider on a case-by-case basis in deciding whether an action should be transferred. *See Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498–99 (9th Cir.2000). These factors include: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause

of action in the chosen forum, (6) differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) ease of access to sources of proof. *Id.* Among the aforementioned factors, Defendant relies on the following to buttress its argument to transfer the present action to New Jersey: the relative ease of accessing records and witnesses in New Jersey, its lack of contacts in Washington, and the pending ligation in New Jersey. *See* Dkt. # 9, p. 19. Defendant's arguments to this effect are unpersuasive and do not justify a change in venue, particularly in light of the first to file rule, as well as the strong presumption in favor of Plaintiff's choice of forum.

When, as here, two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action. *See Merial Ltd. v. Cipla Ltd.,* 681 F.3d 1283, 1299 (Fed.Cir.2012). This "first-to-file" rule exists to "avoid conflicting decisions and promote judicial efficiency." *Id.* The rule is not absolute; exceptions may be made if justified by "considerations of judicial and litigant economy, and the just and effective disposition of disputes." *Elecs. for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1347 (Fed.Cir.2005) (internal quotation marks omitted). Justification for an exception may be found in "the convenience and availability of witnesses, [the] absence of jurisdiction over all necessary or desirable parties, ... the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 938 (Fed. Cir. 1993). Resolution of whether the second-filed action should proceed presents a question sufficiently tied to patent law that the question is governed by Federal Circuit law. *Elecs. for Imaging,* 394 F.3d at 1345–46. Application of the first-to-file

ORDER DENYING MOTION TO DISMISS - 16

rule is generally a matter for a district court's discretion, exercised within governing legal constraints. *See Martin v. Franklin Capital Corp.,* 546 U.S. 132, 139 (2005); *Merial,* 681 F.3d at 1299.

There is no dispute that the instant infringement action was filed prior to the declaratory judgment action in New Jersey. StrikeForce has not shown that interests in litigant or judicial economy favor transferring the present action to the U.S. District Court for the District of New Jersey. Rather, the factors to be considered by the Court to determine if transfer is appropriate on balance point towards retaining the action in this forum. For example, StrikeForce's contacts with Messrs. Lee and Grindstaff relate to the Plaintiff's cause of action in the chosen forum. Second, the differences in the costs of litigation in the two forums are not so significant as to be onerous to Defendant.  Third, the ease of access to sources of proof is not significantly impacted by the chosen forum.  Lastly, StrikeForce does not make a compelling argument to transfer the present action to New Jersey based on the fair play and substantial justice analysis outlined above.

## CONCLUSION

For the foregoing reasons, the Court hereby ORDERS that Defendant's Motion to Dismiss for Lack of Jurisdiction and Improper Venue (Dkt. # 9) is DENIED. Defendant's alternative request to transfer venue to the U.S. District Court for the District of New Jersey is also DENIED.

Dated this 31st day of July 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING MOTION TO DISMISS - 17